UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**NINA SMITH, individually and on behalf of herself and all others similarly situated,**

 Plaintiff,

 v.

**HSN, INC., INGENIOUS DESIGNS, LLC, JOY MANGANO, KILMA MCKENNISS, JOHN DOES (1–5), and ABC COMPANIES (1-5),**

 Defendants.

Civ. No. 20-12869 (KM) (ESK)

**OPINION AND ORDER**

<u>**KEVIN MCNULTY, U.S.D.J.**</u>:

 Nina Smith filed a complaint in New Jersey state court on behalf of a putative class, claiming that a clothing steamer made and marketed by the Home Shopping Network was defective. The first three named defendants are Home Shopping Network, Inc. ("HSN"), Ingenious Designs, LLC (a subsidiary), and Joy Mangano (Ingenious's president). (For convenience, I will refer to these three collectively as the "HSN defendants".) Also named as a defendant is an individual, Kilma McKenniss, who is not associated with the HSN defendants. The HSN defendants removed the case, invoking this Court's diversity jurisdiction based on the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, *codified in pertinent part at* 28 U.S.C. §§ 1332(d), 1441, 1446. Plaintiff Smith moves to remand the case to state court. (DE 10.)[1] For the

---

[1]  Certain citations to the record are abbreviated as follows:

 DE = docket entry number

 Notice = HSN's Notice of Removal (DE 1)

 Compl. = Complaint, Ex. A to Notice (DE 1-1)

 HSN Decl. = Declaration of Mark Smith in Support of Removal (DE 1-2)

following reasons, Smith's motion to remand is **ADMINISTRATIVELY TERMINATED** without prejudice to refiling after targeted jurisdictional discovery.

## I. BACKGROUND

HSN and Ingenious manufactured and marketed a clothing steamer called My Little Steamer Deluxe. (Compl. ¶¶ 3–4.) Defendant Kilmer McKenniss purchased the steamer and had Smith come to her New Jersey home to help her display the product for an online sale. (*Id.* ¶ 7.) McKenniss plugged in the steamer and left the room; when Smith approached, the steamer "spewed out hot water and fell over directly towards her legs." (*Id.*) As a result, Smith sustained serious burns. (*Id.*) Numerous online reviews attest to similar incidents involving the steamer. (*Id.* ¶ 9.)

Smith, on behalf of a putative class, sued the HSN defendants and McKenniss in New Jersey Superior Court. The proposed class consists of all New Jersey residents who purchased or used the steamer. (*Id.* ¶ 12.) The Complaint purports to limit damages-per-class-member to $74,999 but did not estimate the total number of class members. (*Id.*) It alleges four claims against the HSN defendants: (1) violation of the New Jersey Products Liability Act ("PLA"), N.J. Stat. Ann. §§ 2A:58C-1 to -11; (2) breach of express warranty; (3) violation of the New Jersey Consumer Fraud Act ("CLA"), N.J. Stat. Ann. §§ 56:8-1 *et seq.*; and (4) unjust enrichment.[2] The Complaint also alleges a negligence claim against McKenniss, based on the manner in which she set up the product. Smith does not seek class treatment for the claim against McKenniss.

The three HSN defendants removed the case to this Court, invoking federal jurisdiction under CAFA. (*See* Notice.) In support, they provided a

---

Smith Mot. = Plaintiff's Motion to Remand (DE 10-2)

HSN Opp. = HSN's Memorandum in Opposition to Motion to Remand (DE 17)

[2] These claims were also alleged against fictious defendants to the extent discovery revealed that any other companies or officers were involved. (Compl., Count 7.)

declaration from HSN's Director of Planning, Mark Smith, asserting that, between HSN and Ingenious, some 20,000 units of the product have been sold to New Jersey residents since 2015. (HSN Decl. ¶¶ 7–8.) Plaintiff Smith moves to remand the case to state court.

## II. DISCUSSION AND ANALYSIS

CAFA grants federal courts jurisdiction over actions that meet three requirements: (1) the parties are minimally diverse, (2) the class consists of at least 100 members, and (3) the amount in controversy exceeds $5 million. *Judon v. Travelers Property Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)). In these respects, it differs from the usual, non-class-action jurisdictional requirements of complete diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).[3]

A defendant may remove a case brought in state court that appears to meet CAFA's requirements, but a plaintiff's motion to remand triggers the court's ever-present obligation to ensure that subject matter jurisdiction is present. *See Judon*, 773 F.3d at 500. In doing so, I may consider the allegations in the Complaint and Notice, but if there is a dispute, the defendant, as the party invoking jurisdiction, must show by a preponderance of the evidence that the jurisdictional requirements are met. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014); *Judon*, 773 F.3d at 500.

---

[3] The Complaint's attempt to limit damages to $74,999 per class member may have been drafted with those ordinary diversity requirements of § 1332(a) in mind. Under CAFA, the amount in controversy is a different, and aggregate, amount. In any event, except as to Smith herself, the limitation likely would have been ineffective. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (disregarding plaintiff's limit on damages, for purposes of CAFA amount in controversy, because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified" and therefore "lacked the authority to concede the amount-in-controversy issue for the absent class members").

### A. Timeliness

At the outset, Smith argues that removal was not timely because the three HSN defendants filed their Notice of Removal thirty-one days after one of them, defendant Mangano, was served on August 19, 2020. (Smith Mot. at 1–2.) A defendant has thirty days from the date of service to file a notice of removal. 28 U.S.C. § 1446(b). In computing that time period, however, the day of the triggering event (for Mangano, August 19) is excluded. Fed. R. Civ. P. 6(a)(1)(A); *see also Otero v. CVS Pharm. Inc.*, Civ. No. 19-15798, 2020 WL 289556, at *2 (D.N.J. Jan. 21, 2020). Thirty days, then, from August 19 is September 18—the day the Notice was filed, making it timely with respect to the service of Mangano.[4]

In any event, however, timeliness does not depend solely on the service of Mangano. "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-serviced defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C). HSN is such a "later-served defendant"; it was served on August 21, 2020. (Ex. C to Smith Mot.) As to HSN, then, the Notice of Removal was unquestionably timely, even by the plaintiff's measure. Because Mangano consents, the Notice was timely for this additional reason.[5]

### B. Exceptions

Smith also invokes two exceptions to CAFA jurisdiction, which I address at the outset.

---

[4] Smith errs by including the triggering date when computing time. (Smith Mot. at 2.)

[5] Smith and HSN agree that the last-served of the three HSN defendants was actually Ingenious, which was served on September 4. (Smith Mot. at 1; HSN Opp. at 4, 6.) Apparently, that proof of service has not been filed; the record contains only proof of *non*-service on Ingenious, wherein the server states that he attempted to serve Ingenious on August 19 but was unable to do so. (Ex. B to Smith Mot.)

I also note here that McKenniss did not join in removal. That fact is inconsequential, because CAFA actions can be removed without the consent of all defendants. *See* 28 U.S.C. § 1453(b).

One is the home-state exception, requiring courts to decline to exercise jurisdiction when "the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed" and a non-diverse defendant is the primary defendant. *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503–04 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(4)(B)). A primary defendant is the one which the plaintiff seeks to hold directly liable and which would sustain the greatest loss if found liable—in other words, the "real target" of the suit. *Id.* at 505. Another exception is the local-controversy exception, requiring courts to decline to exercise jurisdiction when (among other things, and as-applied here), two-thirds or more of the class are New Jersey citizens, "at least one defendant is a citizen of [New Jersey]" (the "local defendant"), the local defendant's "conduct forms a significant basis for the claims asserted," and Smith is "seeking significant relief" from the local defendant. *Id.* at 506–07. Smith must show that an exception applies by a preponderance of the evidence. *Id.* at 503.

The exceptions do not apply because the only non-diverse defendant, McKenniss, cannot be called the primary or local defendant. The Complaint's class-based claims are all directed at HSN for alleged defects in and misrepresentations regarding the product. McKenniss, while named as a defendant, is not named as a defendant for any of the class-based claims. The HSN defendants are the real targets of this suit, and McKenniss is included because she and her premises are implicated in the particular accident that harmed Smith and catalyzed the filing of this action. McKenniss's role in this case and exposure to liability, in comparison to the other defendants, are minor. Accordingly, the home-state and local-controversy exceptions do not apply.[6]

---

[6]     Given that the exceptions clearly do not apply based on the primary- or local-defendant prongs, I need not wade into what portion of the class is New Jersey citizens. *Vodenichar*, 733 F.3d at 503, 506–07; *Lee*, 2015 WL 4510128, at *17 (explaining that a discretionary home-state exception can also apply if between one-third and two-thirds of the class are citizens of the primary defendant's state). I only note that the Complaint's proposed class consists of New Jersey residents, but

### C. Diversity

I turn to the three CAFA requirements: (1) minimal diversity of state citizenship, (2) a proposed class of 100 members, and (3) an aggregate amount in controversy of $5 million. While the first two are established, I find that the third requires jurisdictional discovery before it can be resolved.

#### 1. State citizenship

CAFA requires only minimal diversity. It provides for jurisdiction if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). On the plaintiff side, a person's "citizenship is determined by her domicile," which "is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). The Complaint states that Smith resides in New Jersey (Compl. at 1) and that the class will consist of New Jersey residents (*id.* ¶ 12).[7] Residency and citizenship are not necessarily the same thing. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). Nonetheless, Smith's Motion to Remand concedes that she is a New Jersey citizen. (Smith Mot. at 4.) Because (1) jurisdictional facts can be put forward in a motion to remand, *see Judon*, 773 F.3d at 502 & n.5, and (2) Smith's statement can be taken as indication that she intends to remain in New Jersey, the state where she resides, *see Washington*, 652 F.3d at 344, she has alleged domicile and is properly regarded as a citizen of New Jersey.

---

because citizenship and residency differ, courts have come to different conclusions regarding whether a proposed class of "residents" satisfies the home-state exception. *E.g.*, *Ellis v. Montgomery County*, 267 F. Supp. 3d 510, 516–19 (E.D. Pa. 2017) (discussing split and lack of guidance from the Third Circuit); *Dicuio v. Brother Int'l Corp.*, Civ. No. 11-1447, 2011 WL 5557528, at *5 (D.N.J. Nov. 15, 2011) (discussing cases with varying results).

7       Alleging "residency" is a common pleading gaffe by plaintiffs who seek to invoke diversity jurisdiction. Here, however, defendants are the ones invoking diversity jurisdiction; Smith was under no obligation to plead or prove citizenship.

6

On the defendant side, a corporation is a citizen of every state where it is incorporated or has "its principal place of business." 28 U.S.C. § 1332(c)(1). HSN is a Delaware corporation with its principal place of business in Florida. (HSN Decl. ¶ 3). Under § 1332(c)(1), HSN is a Delaware or Florida citizen. Thus, there is diversity between Smith and at least one defendant, HSN. CAFA's minimal diversity requirement is met.

### 2. Class size

CAFA requires that the aggregated number of members of all proposed classes be at least 100. 28 U.S.C. § 1332(d)(5)(B). The proposed class here "consists of all New Jersey residents who purchased and/or used a My Little Steamer Deluxe." (Compl. ¶ 12.) The HSN defendants estimate that 20,000 units were sold to New Jersey residents. (HSN Decl. ¶¶ 7–8.) This fact is not meaningfully in dispute,[8] and I take it as establishing that the requirement of 100 proposed class members is met.

### 3. Amount in controversy

CAFA requires that the amount in controversy exceed $5,000,000, aggregated across all claims. *Judon*, 773 F.3d at 500. Although the HSN defendants' Notice alleges that this requirement is met, Smith demurs. (Smith Mot. at 7–8.) As part of the jurisdictional inquiry, I must "find[], by the preponderance of the evidence" that the threshold dollar amount is met. *Dart*, 574 U.S. at 88. When, as here, the Complaint is "indeterminate regarding the amount in controversy," I endeavor to make a "realistic estimate." *Judon*, 773 F.3d at 506–07. I may rely on estimates of (1) the number of proposed class members (2) multiplied by the damages which a typical class member would assert. *See id.* If I can estimate compensatory damages, the calculation of the amount in controversy may also include attorney's fees, *Verma v. 3001 Castor,*

---

[8] Smith does not dispute the assertions in the Declaration or contest that the class size requirement is met. She interprets the Declaration to state that 16,000 units were sold. (Smith Mot. at 5.) However, the Declaration provides that HSN sold 4,000 units and Ingenious sold 16,000 units. (HSN Decl. ¶¶ 7–8.) Because Smith seeks to hold both of those defendants liable, I consider the total number of products sold by them when estimating the class size.

*Inc.*, 937 F.3d 221, 227 (3d Cir. 2019), and treble damages, if available under New Jersey law, *Judon*, 773 F.3d at 508 n.12.

### (a) Damages: CLA Claim

To estimate the damages which the 20,000 potential class members could assert, I begin with the CFA claim. CFA damages are based on a plaintiff's "ascertainable loss," trebled. N.J. Stat. Ann. § 56:8-19. Although the term is incapable of "precise meaning," *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005), "[t]he New Jersey Supreme Court has defined 'ascertainable loss' as 'either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable.'" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012)).

Smith's CFA claim relies on the theory that if HSN had disclosed that the product "spit or leaked water" and "could result in injuries," or if HSN had not advertised the product as safe, class members would not have purchased it. (Compl., Count 4, ¶¶ 3, 10.)[9] Presumably, then, the ascertainable loss asserted is the full purchase price. Usually, when a plaintiff alleges that she bought a product believing it was one way, and it turned out to be another way, her ascertainable loss is the difference in value between the product she expected and the product she received. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335–36 (D.N.J. 2014). Thus, the full purchase price is recoverable only if the product is worthless. *Hammer v. Vital Pharms., Inc.*, Civ. No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012). Still, at the pleading stage, courts have accepted that a CFA claim could proceed on the theory that the full purchase price is recoverable. *E.g., id.*; *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426, 2010 WL 1931251, at *7 (D.N.J. May 12, 2010). The focus is on what damages a plaintiff could reasonably assert: the amount "in controversy," not the amount ultimately proven. In the case of an unsafe product, there is a respectable argument that consumers might not merely discount its value, but would be

---

[9] The Complaint renumbers its paragraphs for every count.

unwilling to buy or use it at all. I will therefore accept the full purchase price as the amount in controversy for the CLA claim.

To estimate that purchase price, Smith provides a webpage with advertisements for the steamer, with prices ranging from $20 to $50, depending on the retailer. (DE 10-3.) The parties do not seem to dispute that this webpage is reliable evidence of the range of prices. (HSN Opp. at 9–10; Smith Mot. at 7–8.) If all 20,000 class members could recover the full purchase price, then damages based on ascertainable loss would fall between $400,000 and $1,000,000. Trebled, those damages would range from $1.2 million to $3 million. Attorney's fees are available for CFA claims, and when making estimates for purposes of CAFA, courts have assumed a rough median award of 30%. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015); *see also Kendall v. CubeSmart L.P.*, Civ. No. 15-6098, 2015 WL 7306679, at *5 (D.N.J. Nov. 19, 2015) (collecting cases). With attorney's fees added, the amount in controversy for the CFA claim comes out somewhere between $1.56 million and $3.9 million.

### (b) Damages: PLA Claim

Because even the high end of the CFA damages estimate falls short of $5 million, I turn to the PLA claim. "[T]he PLA imposes liability upon the manufacturer or seller for a product's manufacturing defects, warning defects, and design defects." *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 153 (N.J. 2020) (internal quotation marks and citation omitted).[10] To bring a PLA claim, a person must have been physically harmed by the product, *id.* at 154 (citation omitted), and may recover damages for "(a) physical damage to property, other

---

[10] The New Jersey Supreme Court recently explained that "[i]f a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the PLA with damages limited to those available under that statute . . . . But nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the *sale* of the product." *Sun Chem.*, 235 A.3d at 155 (emphasis added). Accordingly, "PLA and CFA claims may proceed in separate counts of the same suit, alleging different theories of liability and seeking dissimilar damages." *Id.* At least at this stage, I can assume that Smith could recover under both the PLA and CFA.

than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c)," *id.* at 153 (quoting N.J. Stat. Ann. § 2A:58C-1(b)(2)).

The Complaint alleges that Smith "sustained serious burns" that prevented her "from attending to her normal and usual daily activities." (Compl. ¶¶ 7, 8.) The Complaint does not allege, however, to what extent Smith required medical attention and what her medical expenses were. The Complaint also alleges that "[m]any" purchasers "suffered severe burns" and includes snippets of anonymous online reviews wherein purchasers complain of burns or minor property damage which they experienced. (Compl. ¶ 9.) The online reviews are short on details and cannot even be clearly attributed to New Jersey consumers. What can be gleaned from the Complaint is that some unspecified percentage of the class members are alleged to have suffered an injury that could support a PLA claim.[11]

Two problems thus emerge: there is no basis to determine either (1) how many New Jersey purchasers were injured by the product or (2) what their average injuries were. Instead, the HSN defendants ask me to assume that some percentage of the class suffered injuries and could have claims for compensatory damages of $2,500 apiece. (HSN Opp. at 10–11.) But I cannot just pick numbers from the air; I must find the amount of controversy by a preponderance of the evidence. *Dart*, 574 U.S. at 88. Such "an assumption must be grounded on some reasonable inference that can be drawn from fact," *Judon*, 773 F.3d at 507. There is no evidence before me upon which I could accept the HSN defendants' guesstimate of PLA-based damages.

---

[11]  Although not all class members could bring a PLA claim, I still estimate and include the damages a PLA claimant could assert because it is reasonable to expect that a subclass for PLA claimants could be created. *See generally* 3 Newberg on Class Actions § 7:32 (5th ed. 2020).

In that respect, this case is like *Parrella v. Sirius XM Holdings, Inc.*, Civ. No. 19-15778, 2019 WL 5258173 (D.N.J. Oct. 17, 2019). There, a proposed class consisted of New Jersey consumers who heard an advertised offer by a radio company and purchased a service based on that offer. *Id.* at *1–2. The company estimated that the advertisement reached 169,000 New Jersey residents but could not estimate the percentage of those who acted on the offer. *Id.* at *3. Nonetheless, the company estimated damages to be a certain amount per typical class member (based on the plaintiff's out-of-pocket losses, trebled), added attorney's fees, and proposed a hypothetical rate: Given the estimated damages-per-claim and the known number of residents who received the advertisement, if at least 1.4% of those who received the offer acted on it, then damages would exceed $5 million. *Id.* Judge Thompson rejected this approach, reasoning that it amounted only to "guesswork," in derogation of the principle that the amount in controversy must be established by a preponderance of the evidence. The company, wrote Judge Thompson, had not given a "persuasive reason" to use the 1.4%-figure, other than that it was sufficient to get them over the CAFA jurisdictional threshold. *Id.* at *3, 4.

The HSN defendants ask me to take a similar approach. (HSN Opp. at 11 ("[I]f this Court were to assume that only 2% of the class members may have a personal injury claim (400 people), each person would only need to recover compensatory damages of $2,500 for such damages to aggregate to $1 million.").) However plausible that might be as a hypothetical, it is not factual; like Judge Thompson, I find that it lacks a basis in evidence. If anything, the approach here is on even less stable ground than in *Parrella.* There, the defendant at least had some basis for estimating the value of a typical claim; here, the $2,500 estimate seems to lack a factual basis of any kind. Given the persuasive authority of *Parrella* and the lack of evidence, I find myself unable to estimate damages for the PLA claim.

11

### (c) Damages: remaining claims

The remaining claims for breach of an express warranty and unjust enrichment do not help HSN get to $5 million either. True, Smith could press these claims in addition to her CFA and PLA claims. *See Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 & n.1 (D.N.J. 2016) (allowing the same four claims to be brought together). But "it is fundamental that no matter under what theories liability may be established, there cannot be any duplication of damages. The common law prohibits a double recovery for the same injury." *Ptaszynski v. Atl. Health Sys., Inc.*, 111 A.3d 111, 120 (N.J. Super. Ct. App. Div. 2015) (citation omitted); *see also 49 Prospect St. Tenants Ass'n. v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1149 (N.J. Super. Ct. App. Div. 1988) (CFA was "not intended to sanction duplicative damages for the same economic loss"). The damages recoverable for breach of an express warranty and unjust enrichment are effectively the same as for the CFA and PLA claims. *See Little v. Kia Motors Am., Inc.*, 233 A.3d 377, 394 (N.J. 2020) (difference-in-value is standard measure of damages in breach of warranty case); *Gupta v. Asha Enters., LLC*, 27 A.3d 953, 963 (N.J. Super. Ct. App. Div. 2011) (consequential damages available for breach of warranty claim); *Wanaque Borough Sewage Auth. v. Township of W. Milford*, 677 A.2d 747, 753 (N.J. 1996) (recovery for quasi-contract claims "is typically measured by the amount the defendant has benefitted from the plaintiff's performance").

These claims, while they furnish alternative legal theories of recovery, would not seem to allow for any additional damages.

### (d) Total damages: jurisdictional discovery required

All said, I am left with a situation where it is possible that the amount in controversy exceeds $5 million but the limited evidence presented is insufficient to meet the removing party's burden of proof by a preponderance of evidence. This situation is not new; in such cases, courts have "resorted to the fallback principle that jurisdictional discovery should be permitted where a claim of jurisdiction is not 'clearly frivolous.'" *Lee v. Cent. Parking Corp.*, Civ.

No. 15-0454, 2015 WL 4510128, at *1 (D.N.J. July 24, 2015) (quoting *Roche v. Aetna Health Inc.*, Civ. No. 13-3933, 2014 WL 1309963, at *6 (D.N.J. Mar. 31, 2014)); *see also Judon*, 773 F.3d at 509 ("[T]he District Court 'has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'" (quoting *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995))). "Information available in discovery may help moor both sides' intuitions in the available data." *Lee*, 2015 WL 4510128, at *1. For example, there is a significant range in the possible damages for the CFA claim because the only evidence of the purchase price of the product is a webpage showing a significant price differential. *See* Section II.C.3.a, *supra*. With clearer evidence of the average price of a product sold in New Jersey, I could make a more grounded estimate of that claim, instead of arbitrarily picking the high-end or low-end, an approach discouraged by *Judon*. *See* 773 F.3d at 507. "Better, I think, to place the court's jurisdictional determination on a firm factual footing now. Jurisdictional discovery will not be wasted in any case. The facts relevant to jurisdiction are also central to class certification and the merits of the claims. Whether in federal or state court, this discovery will be required." *Lee*, 2015 WL 4510128, at *2.[12]

I will therefore administratively terminate the motion to remand, subject to renewal after the completion of discovery targeted to the issue of subject matter jurisdiction, and particularly the amount in controversy.

## III. CONCLUSION

For the reasons set forth above, Smith's motion to remand will be administratively terminated without prejudice to renewal after appropriate jurisdictional discovery. Within seven days, the parties shall contact Magistrate

---

[12] The interests of the parties are of course topsy-turvy. Particularly as to the personal-injury claims, the HSN defendants are placing themselves in the anomalous position of attempting, through discovery, to place a greater value on the claims than plaintiff herself does. That, however, is a strategic matter for the HSN defendants; it has no bearing on the merits of the amount-in-controversy issue.

Judge Kiel's chambers and schedule a telephone conference at which targeted jurisdictional discovery may be arranged.

Dated: November 30, 2020

/s/ Kevin McNulty

———————————————

**Hon. Kevin McNulty**
**United States District Judge**