UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NINA SMITH, individually and on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**HSN, INC.,** *et al.*,<br><br>**Defendants.** | Case No. 20–cv–12869–JXN–ESK<br><br>REPORT AND RECOMMENDATION |

**KIEL**, **U.S.M.J.**

**THIS MATTER** is before the Court on the motion (Motion) of plaintiff Nina Smith, a New Jersey citizen, to remand the case to the Superior Court of New Jersey (State Court) because the removal was contrary to the $5 million amount-in-controversy threshold set forth in the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d). (ECF No. 35; *see also* ECF No. 1-1 p.4.) Joint opposition was filed by the following defendants: (1) HSN, Inc. (HSN), which is deemed a citizen of both Delaware and Florida; (2) Ingenious Designs, LLC (IDL), which is an HSN subsidiary and is also deemed a citizen of both Delaware and Florida; and (3) Joy Mangano, who is a New York citizen and is IDL's president (collectively, HSN Defendants). (ECF No.1-2 pp.1, 2; ECF No. 39.) Defendant Kilma McKenniss, who is a New Jersey citizen, has not responded to the Motion. Smith filed a reply brief in further support of the Motion. (ECF No. 41.) For the following reasons, I recommend that the Motion be denied.

## BACKGROUND AND PROCEDURAL HISTORY

McKenniss purchased and owned a My Little Steamer Deluxe, which is a portable clothing steamer (Steamer) manufactured and marketed by the HSN Defendants. (ECF No. 1-1 p.35.) In January of 2019, Smith visited

McKenniss's home to help McKenniss display the Steamer for sale on a website. (*Id.* p. 36.) McKenniss filled up the Steamer with water and plugged it in. (*Id.*) Approximately five minutes later, "[h]ot water came spewing out of the steamer onto both of [Smith's] legs," and Smith "sustained significant burns and subsequent scarring." (*Id.* pp. 36, 37.)

Smith brought the case in State Court in August of 2020 on behalf of a putative class consisting of "all New Jersey residents who purchased and/ or used a [Steamer]." (*Id.* pp. 41, 42.) The complaint alleges four claims against the HSN Defendants: (1) violation of the New Jersey Consumer Fraud Act (NJCFA); (2) violation of the New Jersey Products Liability Act (NJPLA); (3) breach of express warranty; and (4) unjust enrichment. (*Id.* pp. 45–50.) The complaint also alleges a separate negligence claim against McKenniss. (*Id.* p. 51.) Annexed to the complaint were fifty-five reviews of the Steamer that were posted from 2014 through 2018 on the websites for HSN and two retailers, all of which detailed burns and other injuries caused by boiling water shooting out of Steamers. (*Id.* pp. 55–62.) Further, Smith asserts in the complaint that the alleged defect is "widespread and dangerous," and that "[m]any of the purchasers of the [Steamer] suffered severe burns from boiling water leaking and spewing during use." (*Id.* pp. 37, 39.)

The HSN Defendants removed the case by invoking subject-matter jurisdiction pursuant to CAFA. (ECF No. 1.) In doing so, the HSN Defendants argued that "[a]lthough [they] deny *any* liability as to Plaintiff's claims, it is apparent that the amount in controversy here exceeds $5,000,000." (*Id.* p. 7.)[1] In support of removal, the HSN Defendants submitted a declaration from HSN declaring that New Jersey residents had purchased approximately 20,000 Steamers since 2015. (ECF No. 1-2 p. 2 (declaring HSN Defendants directly sold

---

[1] McKenniss's consent to removal was not necessary. *See* 28 U.S.C. § 1453(b).

4,000 Steamers to New Jersey residents, and third-party retailers sold at least 16,000 Steamers to New Jersey residents).)[2]

Smith filed her first motion to remand the case to State Court in October of 2020 (First Motion), which the HSN Defendants opposed. (ECF Nos. 10, 17.) District Judge Kevin McNulty, who was assigned to the case upon its removal to this Court, denied the First Motion by an opinion and order dated November 30, 2020, to the extent Smith argued that: (1) the removal was untimely; (2) the removal was barred by the local-controversy and the home-state exceptions; and (3) minimal diversity of citizenship was lacking. *See Smith v. HSN, Inc.*, No. 20-12869, 2020 WL 7022640, at *2–4 (D.N.J. Nov. 30, 2020).

However, Judge McNulty administratively terminated the First Motion to the extent Smith argued that the amount in controversy, *i.e.*, an amount in excess of $5,000,000 aggregated across all claims (CAFA Threshold), had not been met. *Id.* at *7. In doing so, Judge McNulty reasoned that he was "left with a situation where it is possible that the amount in controversy exceeds $5 million but the limited evidence presented is insufficient to meet the removing party's burden of proof by a preponderance of evidence." *Id.* Judge McNulty expressed concerns about the NJCFA claim, in that:

> [T]here is a significant range in the possible damages for the [NJ]CFA claim because the only evidence of the purchase price of the product is a webpage showing a significant price differential …. With clearer evidence of the average price of a product sold in New Jersey, I could make a more grounded estimate of that claim, instead of arbitrarily picking the high-end or low-end[.]

*Id.*

---

[2] The declaration was executed by HSN's Director of Planning Mark Smith, who is not to be confused with plaintiff Nina Smith. The use of "Smith" in this report and recommendation refers to the named plaintiff only.

As to the NJPLA claim, Judge McNulty questioned the HSN Defendants' argument that the Court could assume that those class members who suffered personal injuries due to the Steamer: (1) would seek $2,500 in compensatory damages; and (2) comprised 2% of the 20,000 class members, *i.e.*, 400 people, to bring the class damages under the NJPLA claim to a total of $1 million. *Id.* at *6. Judge McNulty held that "the $2,500 estimate seems to lack a factual basis of any kind." *Id.*

As a result, the parties were directed to engage in "discovery targeted to the issue of subject matter jurisdiction, and particularly the amount in controversy." *Id.* at *7. I entered a discovery schedule on December 15, 2020. (ECF No. 27.) Jurisdictional discovery is now complete. (ECF Nos. 31, 32.)[3]

Smith concedes that New Jersey residents purchased approximately 20,000 Steamers. (ECF No. 35-4 p.5.) In addition, the parties agree at this juncture that discovery has revealed the average cost of a Steamer was $23.72. (*Id.* p.7; ECF No. 39 p.6; ECF No. 40.) Further, the HSN Defendants have submitted evidence produced by Smith herself in discovery that Smith incurred medical expenses in the amount of $4,988 to treat the alleged injuries caused by the Steamer, which Smith does not deny. (ECF No. 39-3 pp.2, 8; ECF No. 39 p.6.) However, as discussed *infra*, the jurisdictional implications of Smith's medical expenses remain disputed by the parties.

Smith now argues for remand solely on the basis that the HSN Defendants have not demonstrated that the CAFA Threshold has been met. (ECF No. 35.) In opposition, the HSN Defendants argue they have shown that the CAFA Threshold has been met by a preponderance of the evidence. (ECF No. 39.) The parties agree that "the only open question as to whether this Court has

---

[3] The HSN Defendants filed a motion to dismiss on October 16, 2020, which was subsequently fully briefed. (ECF Nos. 10, 14, 22.) In view of an anticipated renewed motion to remand, the motion to dismiss was administratively terminated. (ECF No. 32.)

jurisdiction under … CAFA … is whether the amount in controversy exceeds $5 million." (*Id.* p. 5; ECF No. 35-4 p. 6.) The case was assigned to District Judge Julien Neals after the Motion was fully briefed, and the Motion was referred to me to issue a report and recommendation.

## DISCUSSION AND ANALYSIS

### I. STATUTES IN ISSUE

#### A. CAFA

A putative class action may be removed to federal court pursuant to CAFA if the proposed class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (d)(6)). To determine whether the CAFA Threshold has been met, the aggregated claims of the proposed individual class members must amount to more than $5 million. *See Hoffman v. Nutraceutical Corp.*, 563 F.App'x 183, 185 (3d Cir. 2014); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (stating 28 U.S.C. § 1332(d)(6) instructs courts to add up the value of the claim of each member who falls within the definition of the proposed class and to determine whether the resulting sum exceeds $5 million).

When a plaintiff asserts a claim pursuant to a statute, the potential recovery of attorneys' fees and treble damages must be considered if they are available under that statute. *See Judon*, 773 F.3d at 508 n.12 (holding treble damages must be considered in arriving at the amount in controversy); *see also Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019) (holding "attorneys' fees … do count for CAFA's amount-in-controversy threshold"). A determination as to the CAFA Threshold "focus[ses] on what damages a plaintiff could reasonably assert," and "not the amount ultimately proven." *Smith*, 2020 WL 7022640, at *5.

If a defendant removes a putative class action to federal court based on CAFA jurisdiction, and if the named plaintiff in that putative class action moves to remand, "[t]he interests of the parties are of course topsy-turvy" soon thereafter. *Id.* at *7 n.12. In response to the named plaintiff's motion to remand, the removing defendant has the burden of showing that the CAFA Threshold has been met by a "preponderance of the evidence." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)). There had been confusion among the district courts within the Third Circuit concerning whether a removing party must demonstrate that the CAFA Threshold had been met by a "legal certainty," as opposed to a preponderance of the evidence. *See La Stella v. Aquion, Inc.*, No. 19-10082, 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020) (discussing incorrect perception that the Third Circuit held in *Judon* that the legal certainty test is applied to "post-removal challenges to the amount in controversy"). That confusion has since been resolved. *See id.* (concluding that *Owens*: (a) disavowed the legal certainty standard, and (b) directed district courts to apply the preponderance standard); *Grace v. T.G.I. Fridays, Inc.*, No. 14-07233, 2015 WL 4523639, at *3 n.5, *6 (D.N.J. July 27, 2015) (finding *Owens* "indicat[es] that the preponderance of the evidence standard should apply in all situations where the amount in controversy is challenged after a notice of removal [under CAFA] is filed," and thus a court "need not consider whether Defendants satisfy the more demanding legal certainty test").

Judge McNulty applied the preponderance standard in previously assessing whether the CAFA Threshold has been met in this case. *See Smith*, 2020 WL 7022640, at *7 (noting "removing party's burden of proof by a preponderance of evidence" as to whether "the amount in controversy exceeds $5 million"). The parties also agree that the preponderance standard should be applied. (ECF No. 35-4 p.6 (Smith arguing that "by a preponderance of evidence, defendants have failed to show the threshold dollar amount has been or can be met"); ECF No. 39

p.7 (HSN Defendants arguing "the Court need only find that the threshold amount is met by a 'preponderance of the evidence' in order to deny remand").) As a result, the preponderance standard will be applied to the Motion.

### B. NJCFA

The NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise … , or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2.

The NJCFA further provides that a prevailing plaintiff is entitled to recover an award of: (1) "threefold the damages"; and (2) "reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19. Such an award is not a matter of discretion; it is mandatory. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 n.71 (3d Cir. 2016) (holding NJCFA "*mandates* that successful plaintiffs receive treble damages and attorneys' fees and costs"); *Pasquale v. Influential Partners, LLC*, No. 16-00012, 2016 WL 1690089, at *2 (D.N.J. Apr. 26, 2016) (same).

### C. NJPLA

The NJPLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the *harm* was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units

>manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2 (emphasis added).

The NJPLA defines "harm" as:

>(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1(b)(2). Thus, "claims for personal injuries sustained as a result of using a product … fall within the purview of the NJPLA." *Guardavacarro v. Home Depot*, No. 16-08796, 2017 WL 3393812, at *5 (D.N.J. Aug. 8, 2017); *see also Becker v. Smith & Nephew, Inc.*, No. 14-05452, 2015 WL 268857, at *2 (D.N.J. Jan. 20, 2015) (holding NJPLA "is the exclusive remedy for personal injury claims arising out of product use").

## II. SMITH'S ARGUMENTS

As to the NJCFA claim, Smith concedes that: (1) the HSN Defendants "ha[ve] provided discovery showing the average cost of each of the 20,000 [Steamers] to be $23.72"; (2) the total property damages would amount to $474,400, *i.e.*, $23.72 multiplied by 20,000; and (3) the treble damages component under the NJCFA would bring the total amount of potential damages for the NJCFA claim alone to $1,423,200, *i.e.*, $474,400 multiplied by 3. (ECF No. 35-4 p.5.)[4] In addition, Smith offers no suggestion as to an award of attorneys' fees,

---

[4] Smith's papers contain either a typographical or computational error. Smith incorrectly states $23.72 (the Steamer's average cost) multiplied by 20,000 (the number of Steamers sold in New Jersey) is $474,000, and then compounds the error in stating the treble damages provision increases the total amount to $1,422,000. (*Id.* pp.5, 6.)

8

but argues nonetheless that "[e]ven adding in counsel fees, the $5 million threshold is not nearly approached, much less met." (*Id.* p. 6.)

As to the NJPLA claim, Smith argues the following:

> Personal injury claims are not prayed for with the exception of the Smith claim. Other than Nina Smith's personal injury claim, the proposed class does not seek, nor will it seek damages for personal injury from class members. Nowhere in the Complaint is the term "personal injury" used. Members of the class, except for plaintiff, Smith, are willing to so stipulate. … Without personal injury claims, it is impossible to make the leap from $23.72 to $5 million.

(*Id.* pp. 5, 6.) Smith reiterates this argument in her reply brief:

> The Plaintiff has not asserted a pain and suffering element in the Complaint except for the Plaintiff, Nina Smith, as an individual. The Class Action count of the Complaint has not asserted a claim for pain and suffering nor a pain and suffering class…. The 20,000 putative class members to which Defendant's [sic] referred are not the subject of this claim.

(ECF No. 41 p. 5.)

### III. HSN DEFENDANTS' ARGUMENTS

The HSN Defendants argue they have demonstrated by a preponderance of the evidence that the CAFA Threshold has been met. As to the NJCFA claim, the HSN Defendants initially raise the aforementioned treble damages amount of $1,423,200. (ECF No. 39 p. 8.) The HSN Defendants then assume an eventual award of attorneys' fees under the NJCFA of 30% of $1,423,200, thereby arriving at a potential recovery of $426,960 in attorneys' fees under the NJCFA. (*Id.*) When the attorneys' fees are added to the treble damages, the total recovery under the NJCFA alone is $1,850,160. (*Id.*)

As to the NJPLA claim, the HSN Defendants rely upon the actual medical expenses that Smith incurred for treating her burns from the Steamer, *i.e.*, $4,988, not on their previous speculation of $2,500 in medical expenses. (ECF

No. 39-3 pp.2, 8.) The HSN Defendants then postulate that merely 630 of the 20,000 class members, *i.e.*, 3.15% of the total class members, could seek to recover damages for medical expenses under the NJPLA for personal injuries caused by the Steamer. (ECF No. 39 p.9.) By rounding up the medical expenses to $5,000, and then multiplying that amount by 630, the HSN Defendants argue that a recovery of at least $3,150,000 in damages for medical expenses under the NJPLA claim are at stake in the case. (*Id.*) As to Smith's attempt to waive the right of all class members to recover for personal injuries, the HSN Defendants argue that Smith's precertification stipulation would only be binding on Smith, and thus Smith cannot reduce the value of the putative class members' claims in this manner. (*Id.* n.2.)

By adding the potential damages available to the class members under the NJCFA, *i.e.*, $1,850,160, with the potential damages available to the class members under the NJPLA, *i.e.*, $3,150,000, the HSN Defendants arrive at a total that "exceeds $5 million." (*Id.* p.5.) The total then would be $5,000,160.

## IV. THE MOTION SHOULD BE DENIED

I find the HSN Defendants have demonstrated by a preponderance of the evidence that: (1) the amount in controversy for the NJCFA claim is at least $1,850,160; (2) the amount in controversy for the NJPLA claim is at least $3.15 million; and (3) the amount of the total damages is at least $5,000,160 and the CAFA Threshold has been met. As a result, I recommend that the Motion be denied.

### A. NJCFA

Smith does not challenge the potential recovery of the cost of the Steamer at an amount of $23.72 by all 20,000 class members for a total of $474,400, and I find this amount is reasonable based upon the evidence submitted by the HSN Defendants. (ECF Nos. 39 p.6, 40.) In addition, as discussed *supra*, an award

of treble damages under the NJCFA is mandatory, thereby increasing the potential total award to $1,423,200. *See* N.J.S.A. 56:8-19.

The HSN Defendants have also demonstrated by a preponderance of the evidence that the potential recovery of attorneys' fees under the NJCFA claim may be $426,960, or 30% of the treble damages of $1,423,200. The assumption of an award of attorneys' fees of 30% for a successful NJCFA claim is reasonable, as it is founded upon the controlling case law of the Third Circuit Court of Appeals. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015) (holding that when determining whether the amount in controversy has been met in a case removed under CAFA, it should be estimated that "[a] median recovery range for attorney's fees is approximately 30 percent"); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (mandating district courts "consider attorney's fees" when deciding whether the CAFA Threshold has been met on a motion to remand, and noting that "[f]ees could be as much as thirty percent of the judgment"); *see also Haynes v. Artech L.L.C.*, No. 20-09173, 2021 WL 3130826, at *2 (D.N.J. July 23, 2021) (noting in a class action, "attorneys' fees around 30% … [are] reasonable"); *Kendall v. CubeSmart L.P.*, No. 15-06098, 2015 WL 7306679, at *5 (D.N.J. Nov. 19, 2015) (adopting a reasonableness approach "utiliz[ing] the median attorneys' fee award of 30% when determining [whether] the amount in controversy" has been met when addressing a motion to remand a CAFA case); *Demmick v. Cellco P'ship*, No. 06-02163, 2015 WL 13643682, at *15 (D.N.J. May 1, 2015) (stating a default of a 30% attorneys' fee award is the "governing law in the Third Circuit"); *Grace*, 2015 WL 4523639, at *8 (denying motion to remand a case removed under CAFA, and finding the amount in controversy was assumed to include a possible award of "attorney's fees in … the [NJCFA] claims … as much as thirty percent"). Furthermore, Smith does not offer an alternative percentage for the Court's consideration. Thus, the HSN Defendants have shown by a preponderance of the evidence that there is a

potential total recovery under the NJCFA claim in the amount of $1,850,160 when $426,960 in attorneys' fees are added to $1,423,200 in treble damages.

### B. NJPLA

#### 1. Stipulation Waiving Damages

I recommend that Smith's attempt to limit the total recovery under the NJPLA by stipulating away the potential personal injury damages of the entire class be rejected. It is well-settled law that such a stipulation that affects an assessment of the CAFA Threshold "cannot legally bind members of the proposed class before the class is certified" in a case removed under CAFA jurisdiction, and thus Smith's attempt to so stipulate at this juncture must be deemed a nullity. *Knowles*, 568 U.S. at 593; *see also id.* at 593, 596 (directing such a stipulation "should [be] ignored," as a named plaintiff "lacked the authority to concede the amount-in-controversy issue for the absent class members"). Furthermore, the progeny of *Knowles* has uniformly rejected attempts by named plaintiffs in cases removed under CAFA jurisdiction to limit the amount in controversy by waiving the rights of putative class members. *See Winkworth v. Spectrum Brands, Inc.*, No. 19-01011, 2019 WL 5310121, at *3 (W.D. Pa. Oct. 21, 2019) (rejecting named plaintiffs' waiver of certain remedies available in a products liability case under Pennsylvania law, as "it is Plaintiffs' fiduciary duty not to throw away what could be a major component of the class's recovery"); *Alegre v. Atl. Cent. Logistics*, No. 15-02342, 2015 WL 4607196, at *3 (D.N.J. July 31, 2015) (declining to remand a case to recover unpaid overtime wages under the New Jersey Wage And Hour Law, where class representative attempted to waive claims for unpaid overtime wages accruing while the suit was pending and to include only overtime lost during a specific two-year period).[5]

---

[5] *See also Embry v. Ventura Foods, LLC*, No. 19-02773, 2020 WL 3077058, at *3 (E.D. Mo. June 10, 2020) (rejecting named plaintiff's attempt to limit damages under a Missouri Merchandising Practices Act claim by waiving the available punitive and statutory damages for the putative class, because "a proposed class representative [will

Permitting Smith to block the personal injury component of the NJPLA claim would excise the full panoply of recovery available under the NJPLA for potential class members, and would result in that claim being immediately dismissible. *See Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL 141628, at *5 (D.N.J. Jan. 14, 2008) (dismissing NJPLA claim where plaintiffs "expressly disavow[ed]" that they were seeking recovery for personal injuries from product at issue, thereupon rendering the NJPLA claim meritless); *Sinclair v. Merck & Co.*, 195 N.J. 51, 64–65 (2008) (holding the NJPLA "require[s] a physical injury," and a claim under the NJPLA must be dismissed if it "do[es] not allege a personal physical injury"). Such a counterintuitive result would prejudice the putative class members whom Smith professes to represent.

Furthermore, Smith's argument that "[n]owhere in the Complaint is the term 'personal injury' used" (ECF No. 35-4 p. 5) is without merit. (*See* ECF No. 1-1 p. 48 (Smith asserting in the complaint that the Steamer "spit or leaked water … that could result in *injuries to persons*" (emphasis added)).) Smith had the prerogative to bring a putative class action and to assert a claim under the NJPLA in the complaint. Smith cannot now avoid the consequences of that

---

be held] to be inadequate where he failed to seek a full recovery," and thus "[i]t is … not improper to consider the possibility of … [all] damages despite plaintiff's disclaimer"); *Taylor v. Certified Legal Funding, Inc.*, No. 18-00027, 2018 WL 3860243, at *4 (M.D. Fla. July 3, 2018) ("disregard[ing]" named plaintiff's effort to limit recovery available to the putative class under Florida usury statutes to the interest collected on certain investments, as opposed to interest and the entire principal available under such laws, for being "both legally improper, and otherwise irrelevant to the Court's jurisdictional determination"); *Sharpe v. Puritan's Pride, Inc.*, No. 16-06717, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017) (rejecting named plaintiff's effort to limit recovery under a New York Deceptive Acts And Practices Law claim by seeking minimal actual damages as opposed to a larger statutory amount, as "plaintiffs' counsel lacks the authority to legally bind a putative class with a damages limitation"); *Lewis v. Hartford Cas. Ins. Co.*, No. 15-05275, 2015 WL 4430971, at *2 (W.D. Wash. July 20, 2015) (rejecting named plaintiff's effort to waive treble damages available under the Washington Consumer Protection Act for an entire class, as named plaintiff "cannot bind absent class members").

choice. Thus, I recommend that the personal-injury element that is statutorily available under the terms of the NJPLA cannot be waived on behalf of the putative class in spite of Smith's efforts.

### 2. **Potential NJPLA Damages**

In directing further jurisdictional discovery be conducted as to the NJPLA claim, Judge McNulty relied upon the reasoning provided in *Parrella v. SiriusXM Holdings, Inc.*, No. 19-15778, 2019 WL 5258173 (D.N.J. Oct. 17, 2019), which concerned class damages from an allegedly misleading offer by a satellite radio service. *Smith*, 2020 WL 7022640, at *6. *Parrella* held that the showing to meet the CAFA Threshold as to the proposed number of class members and their alleged damages cannot be the result of "guesswork." 2019 WL 5258173, at *3. Upon considering the HSN Defendants' argument at the time concerning the suggested amount of damages among the class members who may have suffered personal injuries from the Steamer—*i.e.*, $2,500—Judge McNulty reasoned as follows:

> However plausible that might be as a hypothetical, it is not factual; like [the district judge in *Parrella*], I find that it lacks a basis in evidence. If anything, the approach here is on even less stable ground than in *Parrella*. There, the defendant at least had some basis for estimating the value of a typical claim; here, the $2,500 estimate seems to lack a factual basis of any kind. Given the persuasive authority of *Parrella* and the lack of evidence, I find myself unable to estimate damages for the [NJ]PLA claim.

*Id.*

Smith does not challenge the HSN Defendants' argument that the potential medical expenses for each potentially injured class member is about $5,000 (*i.e.*, $4,988 rounded up). (*See generally* ECF No. 41.) This $5,000 amount is based upon Smith's actual treatment, and is not the product of "guesswork." By using this amount, it is reasonable to extrapolate that at least 3.15% of the 20,000 class members, *i.e.*, 630, will seek damages of at least $5,000 each for medical expenses

14

incurred as a result of personal injuries caused by the Steamer. This extrapolation results in a potential damages total of $3,150,000 under the NJPLA claim.

The HSN Defendants' estimation that only 630 of 20,000 class members suffered personal injuries is actually conservative. It would be "not unreasonable to assume that … the proposed class representative … has damages that are typical of the [entire] class," and that "the [named] plaintiff's damages reflected the average actual damages of each member of the putative class." *Judon*, 773 F.3d at 507 (citing *Frederico*, 507 F.3d at 197); *see also Exxcel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 825 F.App'x 65, 68 (3d Cir. 2020) (noting it is reasonable to assume a named plaintiff's demonstrated damages are representative of the damages suffered by all of the class members). Furthermore, Smith herself alleges in the complaint that "[m]any of the purchasers of the [Steamer] suffered severe burns." (ECF No. 1-1 p. 39.) In any event, the HSN Defendants' estimation that at least 630 putative class members incurred $5,000 in medical expenses due to Steamer-related personal injuries is consistent with Third Circuit precedent. *See Frederico*, 507 F.3d at 199 (finding CAFA Threshold had been met where defendant asserted that 2,233 out of a proposed class consisting of "tens of hundreds of thousands" could potentially recover under a class claim); *Neale*, 794 F.3d at 357 n.1 (finding CAFA Threshold had been met where defendant asserted 2,536 out of a proposed class of tens of thousands could recover under a class claim).

### C. TOTAL DAMAGES

I find that the HSN Defendants have demonstrated the following by a preponderance of the evidence: (1) the potential recovery under the NJCFA is at least $1,850,160; (2) the potential recovery under the NJPLA is at least $3,150,000; and (3) the total potential recovery in this case is at least $5,000,160, which exceeds the CAFA Threshold.

## RECOMMENDATION AND ORDER

For the reasons stated above, it is:

1. RECOMMENDED that the Motion (ECF No. 35) be **DENIED**.

2. ORDERED that the Clerk of the Court terminate the Motion (ECF No. 35), pending the review of this report and recommendation.

3. ORDERED that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.

4. ORDERED that the parties have 14 days to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

                                                   */s/ Edward S. Kiel*
                                                   **EDWARD S. KIEL**
                                                   **UNITED STATES MAGISTRATE JUDGE**

Date: October 12, 2021